**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BARRY E. CRAGHEAD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-259-GLJ** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant Barry E. Craghead requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

[1] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-751 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-801.

**Claimant's Background**

Claimant was fifty years old at the administrative hearing. (Tr. 36, 158). He completed tenth grade, with special education classes in reading and math, and has worked as a welder, boilermaker, and millwright. (Tr. 29, 205). Claimant alleges he has been unable to work since an alleged onset date of April 11, 2021, due to his knees, lower back, neck issues, and problems with both hands. (Tr. 204).

**Procedural History**

On November 29, 2022, Claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Bill Jones held an administrative hearing and determined that Claimant was not disabled in a written decision dated September 3, 2024. (Tr. 17-31). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had the severe impairments of bilateral mild knee osteoarthritis with right knee repair, degenerative disc disease of the lumbar spine, adjustment disorder, depressive disorder, anxiety disorder, and learning disorder, as well as the nonsevere impairments of mild degenerative disc disease of the cervical spine, chronic changes of the first MTP joint of the foot, and hypertension. (Tr. 19). Next, he

found that Claimant's impairments did not meet a listing, specifically considering Listings 12.04 and 12.06, nor were Claimant's impairments medically equivalent to a listing. (Tr. 20). At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), *i.e.*, except that he could not climb ladders/ropes/scaffolds, and only occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl. Additionally, the ALJ found Claimant could understand and remember detailed instructions and carry out detailed instructions; have frequent interactions with co-workers, supervisors, and the public; and deal with frequent changes in a routine work setting. (Tr. 22). The ALJ then determined that although Claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e.g.*, cashier convenience store (500,000 jobs), housekeeping (1.4 million jobs), and/or mail room sorter (238,000 jobs). (Tr. 29-30).

**Review**

On appeal, Claimant contends the ALJ's assigned RFC and step four findings were deficient, making the jobs at step 5 erroneous. Furthermore, he asserts the ALJ failed to properly weigh the medical evidence and develop the record, or to consider whether he met a Listing in light of his combination of impairments. The Court disagrees, and the decision of the Commissioner should therefore be affirmed.

The relevant medical records reflect[2] that in September 2020 Claimant underwent a

[2] Claimant's motion contains some description of the evidence and testimony in the record, but he attached an exhibit 10 pages in length, single-spaced, containing an in-depth recitation of the medical evidence in the record. This appears to be an attempt to avoid compliance with Loc. Civ. R. 7.1(c), which limits briefs to no more than twenty-five pages, and requires an indexed Table of

CT of the lumbar spine, which showed moderate degenerative disease of the spine. (Tr. 335). He underwent sacroiliac joint injections in March 2021. (Tr. 404-405). By June 2021, medication was managing Claimant's pain, but he had positive lumbar facet tenderness, moderate swelling, joint laxity, popliteal and pedal pulses were present and intact, and he had positive straight leg raise tests bilaterally. (Tr. 421-423). He had an antalgic gait and was able to walk a few steps. (Tr. 422). This continued to September and November 2021 and beyond. (Tr. 437, 448, 531-551). In April 2022 Claimant underwent a steroid injection for the cervical spine following an MRI showing mild cervical spondylosis worst at C5-6 and mild degenerative disc disease. (Tr. 629-631). At a pain management follow-up appointment in July 2022, Claimant reported the medication helped with his lower back pain, and he had consulted with a neurosurgeon and surgery was not indicated. (Tr. 491). He had limited range of motion of the cervical, thoracic, and lumbar spine, as well as an antalgic gait with which he ambulated with moderate difficulty. (Tr. 492). This continued through January 2023. (Tr. 512-525).

In June 2021 Claimant had right knee pain consistent with a medial meniscal tear, for which he underwent surgery on August 18, 2021. (Tr. 316-323). Follow-up x-rays in 2022 showed mild osteoarthritis in his bilateral knees. (Tr. 325, 327). He received an injection in the left knee on October 28, 2021. (Tr. 544). Another injection is noted on

Contents and Table of Authorities for briefs over fifteen pages in length. As other courts have done, the Court "regards the inclusion of this exhibit as an inappropriate means of avoiding the page limit[;] as a result, [Plaintiffs'] exhibit has not been considered." *Collectable Promotional Prods., Inc. v. Disney Enters., Inc.*, 2009 WL 1543449, at *1 n.1 (W.D. Okla. June 2, 2009). The appropriate place for substantive argument is in the briefing itself; these appeals neither invite nor require a detailed description of every medical record provided on appeal.

October 26, 2023. (Tr. 836-837). A December 2023 x-ray of the right knee showed, *inter alia*, minimal osteoarthritic changes. (Tr. 819).

In February 2023, Claimant presented for an outpatient visit reporting wheezing, anxiety, and panic attacks following the loss of his wife that week. (Tr. 529). He was affected by a limp and was depressed, but declined an ssri at that point. (Tr. 530).

In an undated latter, APRN Geany Chang from Pain Management of Oklahoma drafted a letter stating that Claimant's current regimen managed his pain level as best it could, but that his diagnoses of low back pain, lumbar radiculopathy, sacroiliitis, pain in left and right knee and right leg, and osteoarthritis of the right knee may lead to some physical limitations related to standing, walking, or sitting for long periods such that constant rest and change in position help alleviate his pain. She further noted that Claimant was not a surgical candidate. (Tr. 821).

On June 30, 2023, Alyssa Rippy, Ph.D., conducted a mental status examination of Claimant, at which time she assessed him with adjustment disorder with severe depressed mood, specific learning disorder regarding reading comprehension and dyslexia, and rule out neurocognitive disorder secondary to traumatic head injury. (Tr. 647). She recommend further neuropsychological testing to determine the presence and severity of any cognitive issues, and noted he would likely have mild issues coping with work-related stress and work-related stressors, and adapting to a workplace environment due to depression. Additionally, she noted likely issues with retention, attention, and sustained concentration due to possible cognitive issues and depression, but no issues understanding and following directions, and only mild issues interacting with others due to depression. (Tr. 647).

State reviewing physicians determined initially that Claimant could perform light work with no exertional limitations, but that he could only frequently climb ramps/stairs, stoop, kneel, and crouch, occasionally crawl, and never climb ladders/ropes/scaffolds. (Tr. 56). On reconsideration, the state physician again found Claimant could perform light work, but limited him to occasionally climbing ramps/stairs, stooping, kneeling, crouching, and crawling, and never climbing ladders/ropes/scaffolds. (Tr. 69). As to his mental impairments, state reviewing physicians found he could perform simple and some detailed work with routine supervision, interact with others on a superficial work basis, adapt to a routine work setting, and pace, concentrate, and persist for an eight-hour workday and forty-hour workweek despite psychological symptoms. (Tr. 60). At reconsideration, the state physician found Claimant could understand, recall, and perform simple and detailed tasks and make related judgments, but that he would be unable to maintain concentration for complex tasks and will experience some lapses on some detailed tasks that require sustained attention, but that he could relate to supervisors, peers, and the public, and adapt to a work setting and some changes in the work setting, as well as concentrate and focus for two-hour periods with routine breaks, and pace and persist for an 8-hour workday and 40-hour workweek. (Tr. 72).

In his written opinion at step three, the ALJ noted that Claimant's mental impairments, singly and in combination, did not meet Listings 12.04 or 12.06, finding moderate limitations in understanding, remembering, or applying information and concentration, persistence, and pace, along with mild limitations in interacting with others and adapting and managing oneself. (Tr. 20-21). At step four, the ALJ summarized

Claimant's hearing testimony, then provided a treatment records synopsis and an analysis. (Tr. 22-29). As relevant, the ALJ noted Claimant's treatment history prior to the alleged onset date included CT scans and pain management for the back. (Tr. 23). The ALJ then provided a chronological summary of the evidence in the record, including objective tests, treatment plans, and medication management. As for the analysis, the ALJ noted Claimant's pain had been generally well managed and without serious complications, and that he had remained mobile, independent, and able to perform his activities of daily living. (Tr. 26). The ALJ noted Claimant's exam findings of a nonspecific limp and knee pain into 2023, but that he otherwise ambulated without an assistive device. (Tr. 27). Furthermore, the ALJ noted treatment consisted of conservative measures such as medication and occasional injections, which appeared to manage his pain. (Tr. 27). As to his mental impairments, the ALJ noted Claimant did not require or appear to seek mental health treatment other than medication but was willing to do so if it became necessary. (Tr. 27). While finding Claimant's allegations of disability not entirely consistent with the medical evidence, the ALJ found his impairments did support some limitations to the RFC. (Tr. 28). The ALJ found the state reviewing physician opinions persuasive, and the same for Dr. Rippy, but that APRN Chang's opinion provided no specific limitations and was therefore not persuasive except to the extent it was consistent with evidence showing some degree of physical limitation. The ALJ ultimately determined Claimant was not disabled. (Tr. 29-30).

Step 3 Listing. Claimant contends he meets the symptom criteria for a combination of the Listings, such that he should be founds disabled. Citing to Listing, 12.04

(Depression), 12.06 (Anxiety), 1.15 (Spine) and 1.18 (Major Joints), he acknowledges that he meets the symptom severity of none of these, Docket No. 12, pp. 9-10, then immediately asserts that he meets all four *and* is categorized as closely approaching advance age, and should therefore be found disabled. *Id.* Claimant largely cites his gait/ambulation problem, pain, and problems related to his bilateral upper extremities.

The Listing of Impairments ("the Listings") contains a description for each major body systems impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton*, 79 F.3d at 1009 [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why a claimant was not disabled at step three. *Id.* (citing *Cook v. Heckler*, 783 F.2d 1168, 1172-1173 (4th Cir. 1986)). In this case, the ALJ found that the claimant's impairments did not meet or equal any listing. In making this determination, the ALJ applied Listings 12.04 and 12.06, and stated that he considered all of the relevant physical listings but that Claimant met no criteria for any of them and no physician made any findings the same or equivalent to any Listing. (Tr. 20).

Claimant argues that he is disabled based on a medical equivalence to the four identified Listings.

> To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:
> 1. A prior administrative medical finding from an [medical consultant or psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
> 2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
> 3. A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.

*Soc. Sec. Ruling 17-2p*, 2017 WL 3928306, at *3 (Mar. 27, 2017). Claimant provides support for none of these factors. Claimant thus fails to meet his burden to establish that he meets or medically equals a particular Listing, and points to no specific evidence that the ALJ failed to account for as the ALJ specifically discussed Claimant's gait/ambulation, hand problems, and mental health treatment.

RFC. Claimant again argues the ALJ erred with respect to his gait and ambulation problems at step four, as well as asserting problems with his bilateral upper extremities. In reviewing the citations to the administrative transcript with regard to the bilateral upper extremities, the Court finds such arguments are made in error because none of the citations say what Claimant purports they say on this subject. *Compare* Docket No. 12, pp. 6-7 *with* Tr. 52-53, 864.[3] Accordingly, any asserted restrictions related to bilateral upper extremities is unavailing.

As to Claimant's repeated arguments regarding gait and ambulation, related to

[3] Claimant cites these transcript pages as related to VE testimony regarding purported limitations and recurrence of carpal tunnel, but these pages do not support these claims. Claimant accurately reports he underwent carpal tunnel surgery in 2019. (Tr. 781-782).

bilateral knee issues and dysfunction, the Court finds the ALJ made no error. Claimant contends the ALJ erred in assessing his RFC in relation to the medical evidence because he should be limited to at least sedentary work with additional restrictions. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 96-8p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty.

Plaintiff's third arguments relates to this second one; he argues the ALJ failed to weigh the evidence related to his gait and range of motion issues which should have translated to further limitations because there was substantial evidence of ongoing impairments. However, Claimant points to no evidence the ALJ failed to discuss, nor does he allege the ALJ failed to properly describe the evidence in the record, and the Court finds

the ALJ discussed all the evidence in the record, including the objective findings and his reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

Additionally, Claimant argues the ALJ erred in failing to order the neuropsychological testing recommended by APRN Chang, and that his depression was exacerbated by the loss of his wife. Claimant did not, however, request such additional testing at the administrative level. A social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360-361 (10th Cir. 1993) (citing *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). However, the ALJ does not have a duty to order a consultative examination and therefore has "broad latitude" in deciding whether or not to do so. *Hawkins*, 113 F.3d at 1166 (citing *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.]" *Id.* [citation omitted]. "[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of

disability." *Hawkins*, 113 F.3d at 1169. "Thus, the relevant issue before this Court is whether the plaintiff demonstrated there is sufficient evidence of a reasonable possibility that a disability exists, and that a consultative exam would be of material assistance in resolving the issue of disability." *Baraesheia M. P. v. Kijakazi*, 2021 WL 2954003, at *6 (N.D. Okla. July 14, 2021).

Claimant did not raise the issue at the administrative level, and there is nothing in the evidence to indicate that further evaluation was necessary. *See* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). Claimant's own Function Report endorses no mental or cognitive impairments at all. (Tr. 204, 219-226). *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) ("We disagree with claimant's implicit argument that the agency, not the claimant has the burden to provide evidence of claimant's functional limitations."). While additional evidence may have been helpful, Claimant has not met his burden to establish the necessity of a consultative examination here. *See, e. g., Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (finding "no need" to develop the record with a consultative examination where "sufficient information existed" for the ALJ to make the disability determination.).

Claimant has pointed to no *medical* documentation providing further limitations. Because he points to no evidence other than his own assertions, the Court declines to find an error. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform

the standing and walking requirements of light work is not supported by any authority."). Essentially, Claimant asks the Court to reweigh the evidence in his favor, which the Court cannot do. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (citing *Casias*, 933 F.3d at 800).

Plaintiff attempts to argue that medical appointments would preclude him from sufficient attendance at work, and he questions the jobs data provided by the vocational expert ("VE"). However, the jobs data argument is largely unsupported and muddled by the arguments related to nonexistent bilateral upper extremity impairments and appear based on speculation that the VE estimated too many jobs, and the Court finds no error. Additionally, the argument regarding attendance at work is equally unsupported by the record.

The ALJ noted the medical records available in this case, gave reasons for his RFC determination, and ultimately found that Claimant was not disabled. This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Any argument by Claimant ultimately requests an impermissible reweight of the evidence. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 22nd day of September, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**